RICHARD MUNSON *v.* UNITED TECHNOLOGIES CORPORATION, HAMILTON STANDARD DIVISION
(10187)

FOTI, LAVERY and HEIMAN, Js.

Argued March 25—decision released July 7, 1992

*Daniel E. Livingston,* with whom was *Mary E. Kelly,* for the appellant (plaintiff).

*Joseph C. Zemetis,* for the appellee (defendant).

LAVERY, J. This appeal involves the plaintiff's claim that the defendant wrongfully terminated his employment. The plaintiff, Richard Munson, brought an action

in three counts against the defendant, United Technologies Corporation, Hamilton Standard Division, alleging that the defendant's termination of his employment was wrongful because it breached their employment contract and breached an implied covenant of good faith and fair dealing, and employees of the defendant had made negligent misrepresentations to him. After a jury trial, the trial court directed a verdict for the defendant on the negligent misrepresentation count, and submitted the remaining two counts to the jury. The jury rendered a general verdict for the defendant on both counts.

On appeal, the plaintiff claims that the trial court improperly (1) excluded admissible testimony, (2) directed a verdict for the defendant on the negligent misrepresentation count, (3) charged the jury on the relevant contract law, and (4) refused to grant either the motion to set aside the verdict or the motion for a new trial. The plaintiff further asserts that the trial court's action is not protected by the general verdict rule. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In 1973, the plaintiff applied for and accepted a position as a security officer with the defendant.[1] The plaintiff remained in the employ of the defendant for the next eleven years. Because of the plaintiff's tardiness from November, 1983, through October, 1984, he received four formal warnings from his supervisor, Lieutenant John Garvulenski.[2] On October 15, 1984, Garvulenski gave the plaintiff what he termed a final verbal warning. Despite this warning, the plaintiff was late four more times before December 12, 1984.

[1] The plaintiff was initially employed as a firefighter. His job was reclassified as a fire/security officer when the defendant merged its fire department and its security force.

[2] Attendance records for 1983 and 1984 show that the plaintiff had been late for work over forty times.

The two instances of tardiness that triggered the termination of the plaintiff's employment occurred on December 5 and December 8, 1984. On December 5, the plaintiff arrived at work more than two hours late. When asked for an explanation by his shift supervisor, he answered that he was late because he was working at his other job. On December 8, the plaintiff arrived at work more than four hours late, explaining that he had been drinking at a party the previous night. On Monday, December 10, 1984, the head of the defendant's security force, Captain Clarence Toler, brought the plaintiff's attendance record to David McGrath, director of security for the defendant. Toler recommended that the plaintiff's employment be terminated. McGrath, who made the final decision, decided that the plaintiff's termination was warranted due to the reasons given for his two most recent incidents of tardiness and his overall history of tardiness. Other relevant facts will be set forth as necessary.

The plaintiff's first claim is that the trial court improperly excluded his testimony regarding the statements allegedly made to him by two of the defendant's employees. The plaintiff was prepared to testify that in the early stages of the application process, he met with Frank Grismaula, who was employed in the defendant's personnel department. During their hour long meeting, the plaintiff asked Grismaula if the position was a union position. Grismaula stated that it was not, and further told the plaintiff that a union was not necessary because a progressive discipline policy was in place. In 1981, Lieutenant Albert K. MacDonald, one of the plaintiff's supervisors, told the plaintiff that he had no present problem with his attendance, and that if any problems arose in the future, progressive discipline would begin anew, with counseling, verbal warning and written warning.

The trial court found that the plaintiff's testimony regarding statements made by Grismaula and MacDonald was inadmissible because the plaintiff had failed to establish their authority to speak on behalf of the defendant.[3] The plaintiff asserts that the authority of Grismaula and MacDonald was indeed established, and that the statements were not hearsay or were admissible as admissions of a party opponent.

The mere existence of an employment relationship without more does not render statements of an employee admissible against an employer. *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 586, 200 A.2d 721 (1964). "Before evidence can be admitted to show what an agent said, it must be established that the agent was authorized by the principal to make an admission." *Robles* v. *Lavin,* 176 Conn. 281, 284, 407 A.2d 957 (1978); *Hartford National Bank & Trust* v. *DiFazio,* 6 Conn. App. 576, 586, 506 A.2d 1069 (1986). The agency relationship must be proved by a fair preponderance of the evidence. *Robles* v. *Lavin,* supra; *Leary* v. *Johnson,* 159 Conn. 101, 105, 267 A.2d 658 (1970). The plaintiff concedes that Grismaula's and MacDonald's statements, even if not hearsay, were not admissible if they lacked the authority to make the statements.

"Apparent authority must be derived not from the acts of the agent but from the acts of his principal. '[The] acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in

---

[3] In sustaining the defendant's objection to the proffered testimony, the court explained, "We don't have, I think, in the present status of evidence as it comes in, anything which would give us a basis for saying that you have established the authority of either the immediate supervisor or the personnel individual to speak as the authorized agent of the company on the subject [of progressive discipline]."

consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority.' " *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 8, 437 A.2d 822 (1980); *Edart Truck Rental Corporation* v. *B. Swirsky & Co.,* 23 Conn. App. 137, 139, 579 A.2d 133 (1990).

In support of the proffered testimony, the plaintiff offered evidence that Grismaula had interviewed him for a job with the defendant. The plaintiff, however, knew only that Grismaula worked in the defendant's personnel department, and did not know Grismaula's job title. To justify the admission of the statements by MacDonald, the plaintiff relied on the testimony of Toler that lieutenants, as supervisors, attempted to answer employees' questions concerning the defendant's policies by referring to the supervisors' policy guide or obtaining assistance from the personnel department. This was the sum total of evidence presented by the plaintiff in support of the proffered testimony. The record reveals that the plaintiff offered no evidence to establish that Grismaula or MacDonald had the actual authority to make statements binding on the defendant concerning its disciplinary policies. Likewise, the plaintiff failed to offer evidence concerning any acts or statements of the defendant that would serve to vest either Grismaula or MacDonald with the apparent authority necessary to bind the defendant by their statements.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent an abuse of that discretion." *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *State* v. *Menzies,* 26 Conn. App. 674, 685–86, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992). We conclude that the trial court

did not abuse its discretion in determining that Grismaula and MacDonald lacked the authority to bind the defendant and, therefore, the exclusion of this testimony was proper.

The plaintiff also asserts that the trial court improperly excluded the testimony of David Oliver, another employee of the defendant. Oliver sought to testify that in 1985, after the plaintiff's termination, a supervisor told him that a progressive discipline policy had always been in effect for the security department. This testimony was excluded by the trial court on relevancy grounds.

"The trial court has broad discretion in determining the relevancy of evidence. *State* v. *Alvarez,* 216 Conn. 301, 309, 579 A.2d 515 (1990). Evidence is admissible if it has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. Note, 73 A.L.R.2d 769, 787. *State* v. *DeJesus,* [194 Conn. 376, 381, 481 A.2d 1068 (1984)]. *State* v. *Doehrer,* 200 Conn. 642, 649, 513 A.2d 58 (1986)." (Internal quotation marks omitted.) *State* v. *Ireland,* 218 Conn. 447, 455–56, 590 A.2d 106 (1991); *Lombardi* v. *Groton,* 26 Conn. App. 157, 163, 599 A.2d 388 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1361 (1992). The court determined that this proffered testimony was not relevant, in part because the defendant did not have a strict policy regarding the distribution of information concerning any discipline policy. Consequently, the information allegedly given to Oliver was not necessarily the same as that given to the plaintiff, if any such information was given to the plaintiff at all. We conclude that the trial court's exclusion of this testimony was not an abuse of discretion.

The plaintiff next claims that the trial court improperly directed a verdict against him on the negligent misrepresentation count. "The standard of review of

directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. . . . On reviewing the action of the trial court in first directing and thereafter refusing to set the verdict aside, the evidence must be considered in the light most favorable to the plaintiff. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . ." (Citations omitted.) *Merola* v. *Burns,* 21 Conn. App. 633, 636, 575 A.2d 1025 (1990); *Sokolowski* v. *Medi Mart, Inc.,* 24 Conn. App. 276, 285–86, 587 A.2d 1056 (1991).

"[E]ven an innocent misrepresentation of fact 'may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.' . . . The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1979): 'One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' . . ." (Citations omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 217–18, 520 A.2d 217 (1987).

Even considering the evidence in the light most favorable to the plaintiff, the evidence introduced at trial was insufficient for the jury reasonably to find in favor of the plaintiff on his claim of negligent misrepresentation. On October 15, 1984, when Garvulenski gave the plaintiff a final verbal warning, he told him that

next time he was tardy he would receive a written warning. The defendant asserts that this was a negligent misrepresentation because his subsequent tardiness resulted not in a written warning, but in the termination of his employment. The evidence clearly demonstrates, however, that the plaintiff's employment was not terminated merely for chronic tardiness, but for the occurrences of tardiness on December 5 and 8, 1984, which were exacerbated by the unacceptable reasons the plaintiff gave to justify his lateness, that is, working another job and excessive drinking. Given the circumstances of those two occurrences, the trial court correctly concluded that the plaintiff did not present sufficient evidence to send the count of negligent misrepresentation to the jury. We conclude that the trial court properly directed a verdict for the defendant on the negligent misrepresentation count.

The plaintiff's third claim is that the trial court's instructions to the jury on the breach of contract charge were improper. In light of the general verdict rule, we need not review this claim.

" 'The so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarche*, 188 Conn. 201, 204, 449 A.2d 142 (1982); *Collucci* v. *Pinette*, 185 Conn. 483, 489, 441 A.2d 574 (1981). The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action; see *Matthews* v. *F.M.C. Corporation*, 190 Conn. 700, 706, 462 A.2d 376 (1983); or distinct defenses. See *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.*, 151 Conn. 463, 466, 199 A.2d 698 (1964). A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in

separate counts, a party may seek separate verdicts on each of the counts.' *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202–203, 520 A.2d 208 (1987); see also *Hall* v. *Burns*, 213 Conn. 446, 484–85 n.9, 569 A.2d 10 (1990)." *Spitzer* v. *Haims & Co.*, 217 Conn. 532, 551–52, 586 A.2d 1164 (1991).

This case is analogous to *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208 (1987). In *Finley*, the plaintiff's complaint alleged that his employment was wrongfully terminated because of breach of express contract, promissory estoppel and breach of an implied covenant of good faith. Id., 192. The jury rendered a general verdict for the defendant. Id. Although the trial court improperly instructed the jury on the statute of frauds; id., 198; our Supreme Court upheld the verdict based on the general verdict rule. Id., 204. "While we acknowledge that the trial court's erroneous instructions would have tainted any finding for the defendant on the issue of the contract's existence, we presume that the jury's verdict included a finding that the plaintiff's termination was justified by his unsatisfactory job performance. Accordingly, we conclude that the verdict for the defendant must be sustained." Id.

In the present case, the jury rendered a general verdict for the defendant on the breach of contract count. The plaintiff did not submit interrogatories to the jury in order to determine its findings on each of the plaintiff's claims. The portion of the jury charge that the plaintiff challenges on appeal relates only to the breach of the contract. Because the defendant denied both the existence of a contract provision requiring written warning prior to discharge and its breach, the general verdict rule dictates the conclusion that the jury found all issues for the defendant; that is, no contract requirement existed, and if a contract did exist, that there was no breach. Therefore, even if the jury charge on breach

was incorrect, the defendant cannot prevail because of the general verdict rule, and thus, any such claim of error would be rendered harmless. *Finley* v. *Aetna Life & Casualty Co.,* supra.

Finally, the plaintiff claims that the trial court improperly refused to grant his motions to set aside the verdict and for a new trial.

Our Supreme Court has recently discussed the trial court's role in deciding a motion to set aside a verdict. "In passing upon a motion to set aside a verdict, the trial judge must do what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same, or fail in the discharge of that function which the law has laid upon him; and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside the verdict. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hammond,* 221 Conn. 264, 267–68, 604 A.2d 793 (1992). On the basis of our preceding discussion, we conclude that the trial court properly denied the plaintiff's motion to set aside the verdict.

The plaintiff's assertion that the trial court should have ordered a new trial likewise must fail. "[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether,

by such denial, the court abused its discretion. *State v. Rothenberg,* 195 Conn. 253, 264, 487 A.2d 545 (1985)." *State v. Leavitt,* 8 Conn. App. 517, 524, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. *State v. Hammond,* supra, 269. We conclude that the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.